U.S. ECOLOGY, INC., Plaintiff,

v.

Richard J. CARLSON, Individually and as Director of the Illinois Environmental Protection Agency; Delbert Haschemeyer, Individually and as Deputy Director of the Illinois Environmental Protection Agency; Robert Kuykendall, Individually and as Manager of the Division of Land Pollution Control of the Illinois Environmental Protection Agency; Other Unnamed Officers, Agents, and Employees of the Illinois Environmental Protection Agency, each of them both individually and in their official capacity; United States Environmental Protection Agency; William D. Ruckelshaus, Individually and as Administrator of the United States Environmental Protection Agency; Valdas V. Adamkus, Individually and as Administrator of Region V of the United States Environmental Protection Agency; Other Unnamed Officers, Agents, and Employees of the United States Environmental Protection Agency, each of them both individually and in their official capacity; Ecology Environment, Inc., a corporation, Defendants.

No. 84–3387.

United States District Court,
C.D. Illinois,
Danville Division.

April 28, 1986.

Lathan & Watkins, Chicago, Ill., for plaintiff.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., Michael W. Steinberg, Atty. Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., William Seltzer, Illinois E.P.A., Greig R. Siedor, Asst. Atty. Gen., Environmental Control Div., Springfield, Ill., Edmund B. Moran, Jr., Asst. Atty. Gen., Environmental Control Div., Chicago, Ill., Gross, Shuman, Brizdle, Laub & Gilfillan, P.C., Buffalo, N.Y., Sturm & Levins, Springfield, Ill., Ellen Siegler, Office of Gen. Counsel, U.S. E.P.A., Washington, D.C., for defendants.

## ORDER

BAKER, Chief Judge.

Magistrate Charles H. Evans' recommendation for dismissal of all counts of the complaint against all the defendants is pending before this court.

### OUTLINE OF RELEVANT ENVIRONMENTAL STATUTES AND REGULATIONS

Before proceeding to the particular facts of this case, a brief summary of the federal regulation of hazardous waste sites relevant to this litigation is necessary. In 1980, Congress enacted the Comprehensive Environmental Response Compensation Act of 1980 ("CERCLA"), currently codified at 42 U.S.C. §§ 9601–9657 (1982). Congress intended CERCLA to complement its previous regulation of present hazardous waste disposal practices. *See* Resource Conservation and Recovery Act of 1976, codified at 42 U.S.C. §§ 6901–6987 (1982). CERCLA provided the federal government with a means "to provide relief for the consequences of prior reckless and improper hazardous waste disposal practices." *United States v. Price*, 577 F.Supp. 1103, 1109 (D.N.J.1983). Under CERCLA, the United States Environmental Protection Agency ("USEPA") (as the authorized representative of the President, *see* 42 U.S.C. § 9615 and Exec. Order 12,316, 3 C.F.R. p. 168

(1982)) has the authority to unilaterally respond to problems caused by hazardous waste sites and to pursue those persons whose sites cause damage, and either force clean-up or collect for the cost of a USEPA clean-up. *See* 42 U.S.C. §§ 9604 and 9607(a) (1982). CERCLA also establishes a fund (popularly known as the "Superfund") to pay for response actions taken by the USEPA. *See* 42 U.S.C. §§ 9611 and 9633 (1982).

Before responding to a hazardous waste site, however, the USEPA must know where such a site exists. With this apparently in mind, Congress enacted 42 U.S.C. § 9605(8). Section 9605(8)(A) establishes criteria for determining which hazardous waste sites in the United States require the attention of the USEPA. Section 9605(8)B establishes the procedure under which those sites which meet the criteria of subsection A may become known. Pursuant to subsection B, each state submits a list of those sites which the state deems appropriate for remedial action by the USEPA. The USEPA must then take the proposed sites, conduct an independent evaluation, and promulgate a national priorities list ("NPL") of those waste sites which present "the greatest danger to public health or welfare." *Id.* Subsection B required the USEPA to establish the NPL within one year after December 11, 1980, and revise the list no less than annually.

The USEPA responded to this mandate by first establishing a method to objectively evaluate the danger posed by a hazardous waste site, so that both states and the USEPA could make informed comparisons. For this purpose the USEPA established the hazard ranking system ("HRS"), now published as Appendix A to 40 C.F.R. Part 300 (1985). In using the HRS, an evaluator first gathers "considerable information about the facility [hazardous waste site], its surroundings, the hazardous substances present, and the geological character of the area." Section 2.0, 40 C.F.R. Part 300, Appendix A (1985). This information receives a numerical score based on objective factors, and then using certain formulas within the HRS, the entire site receives a numerical score. State and federal officials can then compare the scores of all sites, and rank them according to their numerical value. Under the HRS those sites with the highest scores pose the greatest danger to the environment and the public.

After the USEPA established the HRS, state officials used it to evaluate sites for possible inclusion on the NPL. Regional USEPA officials then conducted reviews of those sites submitted to insure consistent application of the HRS and then proposed to the USEPA those sites which were found most hazardous. On December 30, 1982, the USEPA published the first NPL as a proposed rule. After a public comment period, the USEPA published the NPL as a final rule on September 8, 1983. 48 Fed.Reg. 40658 (1983). The USEPA, apparently following the same procedures, published the first update of the NPL as a proposed rule on September 21, 1984. 49 Fed.Reg. 37070 (1984).

## STATEMENT OF FACTS

U.S. Ecology, Inc. ("U.S. Ecology"), operates and maintains a licensed chemical waste disposal site in Sheffield, Illinois ("The Sheffield site"). U.S. Ecology operates this site under a license issued by the State of Illinois and it is allegedly operated in compliance with all applicable state statutes and regulations. Although the site has not received any chemical waste materials since January, 1983, U.S. Ecology allegedly still actively maintains the Sheffield site.

On October 2, 1984, U.S. Ecology instituted this litigation against essentially three classes of defendants: the USEPA and various USEPA officials; the Illinois Environmental Protection Agency ("IEPA"), and various IEPA officials; and, Ecology and Environment, Inc., a private corporate at one time under contract with IEPA. The primary thrust of the litigation was to prevent the naming of the Sheffield site on the USEPA's 1985 update of the NPL of those waste disposal sites which

present the greatest danger to public health or welfare. However, the six count complaint sought as well, declaratory and injunctive relief regarding the procedures employed by the USEPA and the IEPA in developing the NPL, damages from the IEPA for denial of due process and damages from Ecology and Environment for its allegedly negligent evaluation of the Sheffield site for the IEPA. Although only a fear when the complaint was filed, U.S. Ecology had its fear realized when on that same day, defendant William D. Ruckelshaus, Administrator of the USEPA, signed a notice of proposed rule making which included the Sheffield site in the second update to the national priorities list.

U.S. Ecology promptly moved for a temporary restraining order to prevent the USEPA from including the Sheffield site on the proposed update to the national priorities list published in the Federal Register on October 15, 1984. *See* 49 Fed.Reg. 40332 (1984) (publication of the proposed additions to the NPL). The damage which U.S. Ecology claimed warranted extraordinary injunctive relief was an alleged injury to reputation which would be caused by having a site it monitors named to the NPL. By order dated October 3, 1984, the late Honorable J. Waldo Ackerman denied the plaintiff's request for a temporary restraining order. Judge Ackerman wrote a brief and somewhat cryptic order in which he noted that CERCLA[1] confers exclusive jurisdiction over challenges to the NPL on the Circuit Court of Appeals of the District of Columbia:

This court does not have jurisdiction to restrain publication of the NPL or any portion thereof. The NPL is an integral part of the nation's contingency plan which establishes "procedures and standards for responding to releases of hazardous substances, pollutants and contaminants." 42 U.S.C. § 9605. The plan was established in accordance with Congressional mandate authorizing the President or his designees "to promulgate any regulations necessary to carry out the provisions of" CERCLA. 42 U.S.C. § 9615. "Review of any regulation promulgated under [CERCLA] may be had upon application ... only in the Circuit Court of Appeals of the United States of the District of Columbia." 42 U.S.C. § 9613. *See Cotter Corporation, N.S.L. v. United States Environmental Protection Agency, et al.*, No. 84–M–1443, slip op. (D.C.1984); *United States v. Rogers* [sic], 575 F.Supp. 246, 254 (D.Ill.1983); *Tinkham v. Reagan*, No. 83–140–L, slip op. (D.N.H.1983) [Available on WESTLAW, DCTU database].

*U.S. Ecology v. Carlson, et al.*, No. 84–3387, slip op. at 2 (C.D.Ill. Oct. 3, 1984). While noting the lack of subject matter jurisdiction over challenges to the publication of the NPL, Judge Ackerman failed to dismiss any of the counts of the complaint.

In the wake of the October 15, 1984, publication of the proposed update to the NPL, the defendants filed motions to dismiss U.S. Ecology's complaint for failure to state a claim upon which relief may be granted. It should be noted that the Sheffield site has yet to be added to the NPL. *See* 40 C.F.R. Part 300, App. B (1985), as amended, 50 Fed.Reg. 37630 and 37950 (Sept. 15 and 16, 1985). After extensive briefing, Magistrate Evans issued a recommendation that all counts against all the defendants be dismissed. Magistrate Evans interpreted the paragraph quoted from

---

**1.** (a) Review of any regulation promulgated under this chapter may be had upon application by any interested person *only in the Circuit Court of Appeals of the United States for the District of Columbia.* Any such application shall be made within ninety days from the date of promulgation of such regulations. Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs.

(b) Except as provided in subsection (a) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount of controversy. Venue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principal office. For the purposes of this section, the Fund shall reside in the District of Columbia. 42 U.S.C. § 9613(a) and (b) (1985) (emphasis added).

Judge Ackerman's order as a ruling on subject matter jurisdiction over Counts I, II, and III, and consequently dismissed these counts against the USEPA. Count IV, an FOIA request, was dismissed as moot. The counts against IEPA and Ecology and Environment were dismissed on grounds which will be addressed in the balance of this order.

## DISCUSSION

U.S. Ecology has objected to Magistrate Evans' recommendation. It sets forth the following objections to which the court responds in turn.

1. U.S. Ecology's objection to the recommendation that the law of the case doctrine requires dismissal of Counts I, II, and III.

U.S. Ecology argues that Judge Ackerman never ruled on the question of subject matter jurisdiction. Rather, they argue Judge Ackerman's order of October 3, 1984, merely determined that a temporary restraining order was not merited. U.S. Ecology supports its argument by noting, if Judge Ackerman intended such a ruling on jurisdiction, he would have dismissed the counts against USEPA in his order instead of scheduling further proceedings. U.S. Ecology argues that Magistrate Evans should have addressed the points and authorities set forth in the briefs opposing dismissal instead of construing Judge Ackerman's order as the law of the case on this issue.

It is quite clear to this court that Judge Ackerman intended his ruling to mean that he did not have subject matter jurisdiction over any challenges to the USEPA actions in developing a proposed NPL. The cases cited by Judge Ackerman in support of his ruling are clear. One case cited by Judge Ackerman in his order, *D'Imperio v. United States of America*, 575 F.Supp. 248, 254 (D.C.N.J.1983) (improperly cited as *United States v. Rodgers*, 575 F.Supp. 246, 254 (D.Ill.1983), sets forth a ruling on a request for essentially the same relief as that sought by U.S. Ecology.

Plaintiffs in the *D'Imperio* case sought to enjoin the United States from continuing to refer to their tract of land, which appears on a proposed NPL, as the "D'Imperio Tract." The district court denied injunctive relief to the plaintiffs for two reasons. These reasons are set forth at 254, the cite specifically noted by Judge Ackerman. One of the reasons for denying injunctive relief was that plaintiffs must appeal to the District of Columbia Court of Appeals for any "review of any regulation promulgated under this act," 575 F.Supp. 254, citing 42 U.S.C. § 9613. The *D'Imperio* decision stated emphatically that "the national contingency plan ... of which the priority list is a part, is a 'regulation.'" Judge Ackerman also cited *Tinkham v. Reagan*, Civ. No. 83–140–L, filed April 14, 1983 (D.N.H.), to support his finding that he did not have jurisdiction.

The plaintiff's contention that Judge Ackerman's ruling pertained only to the temporary restraining order is without merit. There can be no doubt Judge Ackerman ruled he did not have subject matter jurisdiction over this challenge to the procedures implemented pursuant to 42 U.S.C. § 9605 (1982).

Plaintiff has argued in its several briefs that it was not given an opportunity to discuss the law on the issue presented in *D'Imperio*. Its argument, though framed as an objection to Magistrate Evans' recommendations, actually presents a request for reconsideration of Judge Ackerman's ruling. Certainly, the plaintiff in its briefs opposing dismissal attempted to persuade Magistrate Evans to overrule or reconsider Judge Ackerman's ruling. Magistrate Evans was not in a position to overrule a decision by Judge Ackerman. Rather, a motion to reconsider the ruling by Judge Ackerman must be directed to this court. In order to clarify the record, this court will address plaintiff's arguments to reconsider.

The doctrine of the "law of the case" establishes that generally a federal district judge should not overrule a decision

or order made by another federal district judge in the same case. *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *Gertz v. Robert Welch, Inc.,* 680 F.2d 527 (7th Cir.1982). The plaintiff urges this court to abandon the doctrine of the law of the case in this situation primarily because the ruling involves a question of subject matter jurisdiction. It cites two cases in which an appellate court dismissed a matter because of lack of jurisdiction, in effect nullifying unappealed orders by a district court judge. The third case offered by the plaintiff, *Amen v. City of Dearborn,* 718 F.2d 789 (6th Cir.1983), permitted reconsideration of a previously decided jurisdictional question on the grounds that a subsequent legislative change in the federal question jurisdiction statute had eliminated the basis for the previous ruling. These cases are inapposite. A federal court's judgment may always be attacked on the grounds of lack of jurisdiction. However, a ruling denying jurisdiction is only assailable if it improperly deprives U.S. Ecology of any forum in which it will be able to pursue its claim. U.S. Ecology argues that its challenge to the NPL is not a challenge to a regulation and therefore the United States District Court for the Central District of Illinois has exclusive jurisdiction over the controversy. *See* 42 U.S.C. § 9613(b) (1985).[2] This claim presents a convincing reason to re-examine the prior ruling. *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 532 (7th Cir.1982).

■ The court is not persuaded by the plaintiff's arguments to overturn the ruling finding no jurisdiction. Judge Ackerman's ruling was not erroneous. U.S. Ecology's interpretation of the exclusive jurisdiction statement of 42 U.S.C. § 9613(b) as vesting jurisdiction solely in the Central District is not borne out by case law. The Court of Appeals of the District of Columbia recently addressed claims by several plaintiffs who wished to challenge both the contents and the method of compiling the NPL. *See Eagle-Picher Industries, et al. v. United States EPA,* 759 F.2d 922 (D.C.App.1985) (challenge to inclusion of certain sites in NPL) and 759 F.2d 905 (D.C.App.1985) (challenge to use of Hazardous Ranking System (HRS)). The plaintiffs in these twin cases advanced various arguments why the EPA's actions were purportedly in violation of constitutional guaranties and in conflict with the agency's regulations. The District of Columbia Court examined the basis for jurisdiction in the case challenging the use of the HRS. It is clear from the court's discussion at 911, that 42 U.S.C. § 9613(a), not § 9613(b), controls the jurisdiction of the issues presented here. Section 9613(a) provides that:

Reviewing any regulation promulgated under [CERCLA] may be had upon application by any interested person *only in the Circuit Court of Appeals of the United States for the District of Columbia.* Any such application shall be made within ninety days from the date of promulgation of such regulations. *Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs.*

(Emphasis added). Judge Ackerman's ruling on March 3, 1984, relied upon this very statutory provision to find that jurisdiction was vested in only the District of Columbia Court of Appeals. A month later, the Circuit Court of Appeals in *Eagle-Picher* relied upon the same provision to assert jurisdiction.

The *Eagle-Picher* court examined as well the timeliness requirements for challenges to the HRS and concluded that any objections to its use should have been filed in the court within ninety days of the HRS's promulgation. However, the court proceeded to the merits of the challenge to the use of HRS in compiling the NPL because of the ambiguities in the law just prior to the period in which the cause of action accrued. 759 F.2d at 919. The petitioner's challenges to the HRS were carefully ad-

2. *See* n. 1, *supra.*

dressed and rejected. The use of the HRS in evaluating waste sites was deemed reasonable and consistent with the purposes of CERCLA.

Relying on the *Eagle-Picher* decision, this court finds that the claims against USEPA must be dismissed for lack of jurisdiction. The alternative of transferring this case to the District of Columbia Circuit Court of Appeals is not warranted given the disposition of the issues in *Eagle-Picher*. *Cf. Halogenated Solvents Industry Alliance v. Thomas*, 783 F.2d 1262 (5th Cir.1985).

    2.  U.S. Ecology's objection to the recommendation of dismissal of Count I against the IEPA and its officials.

■ Count I sets forth in its prayer for relief the following request: "That this court declare that the Sheffield site is not an abandoned facility for which no responsible party is present to provide an appropriate response and that the Sheffield site cannot be submitted as a candidate for the national priorities list or published on the proposed or any NPL." Magistrate Evans recommends dismissal of the claims in Count I against IEPA for two reasons. First, IEPA is no longer involved in the listing of the Sheffield site on the NPL; and second, only the United States President or his authorized agent has the authority to place a site on the NPL. 42 U.S.C. § 9605(6). Consequently, he concludes the plaintiff failed to state a claim against IEPA. The court is persuaded by the recommendation and adopts it. Plaintiff's cryptic objection fails to raise any relevant grounds for challenging the recommendation. *See* Objections, Paragraph 2.

    3.  Plaintiff's objection to the recommendation of dismissal of Count II against IEPA officials.

U.S. Ecology alleges in Count II that the IEPA and its officials denied it due process and violated the Illinois Administrative Pro-

cedure Act by failing to provide it notice and a hearing prior to submitting the Sheffield site to USEPA for placement on the NPL. Magistrate Evans recommends dismissal of Count II against IEPA and its officials on the grounds that the plaintiff failed to show both a stigma and a tangible loss sufficient to raise a liberty interest meriting due process protections.

■ The court is constrained to note at the outset the recent decision *Atascadero State Hospital v. Scanlon*, — U.S. —, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), in which the Eleventh Amendment immunity from suit in federal court was raised by a state defendant to defeat a claim for damages by a plaintiff alleging a constitutional deprivation. The ruling of the Supreme Court outlined the very narrow grounds for an abrogation or waiver of this immunity. Where a suit in effect seeks damages for a constitutional deprivation to be paid out of a state treasury, the litigant may pursue a remedy in federal court only where Congress has "express[ed] its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Id.* — U.S. at —, 105 S.Ct. at 3148. A state may waive this immunity only by specifying its intent to subject itself to suit in federal court. *Id.* — U.S. at —, 105 S.Ct. at 3147. The plaintiff's claims are based upon Section 1983 [3] and the Illinois Administrative Procedure Act.[4] Section 1983, does not contain language which effectively abrogates the immunity from suit in federal court. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1978), and nothing in the Illinois Administrative Procedure Act creates a waiver of Eleventh Amendment immunity. Hence, the claims against IEPA in Count II must be dismissed for lack of subject matter jurisdiction.

■ Furthermore, the court is confident that Magistrate Evans' analysis of the merits of plaintiff's claims is correct. To state a claim under the Due Process Clause of the Fourteenth Amendment, the plaintiff must allege a deprivation of either a liberty

---

**3.** 42 U.S.C. § 1983 (1982).

**4.** Ill.Ann.Stat. ch. 27, § 1001 et seq. (Smith-Hurd 1981).

or a property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The plaintiff alleges that the placement of the Sheffield site on the proposed NPL will and has resulted in a negative business reputation and the possible loss of business, i.e., a stigma will be attached to U.S. Ecology.

Magistrate Evans noted that to establish a liberty interest of this type, a plaintiff must show both a stigma and a resulting loss. He found that plaintiff failed to allege either of these elements adequately. In response, the plaintiff argues that the allegations in the complaint are sufficient to withstand a motion to dismiss and any conclusion about the sufficiency of these allegations must await a full hearing on the evidence.

Placement on the NPL does not impart the "negative stigma" claimed by the plaintiff. The legislative history of CERCLA, reasserted in the promulgation of the proposed NPL, specifically proclaims that inclusion on the proposed list implies no stigma:

> The priority lists serve primarily informational purposes, identifying for the states and the public those facilities and sites or other releases which appear to warrant remedial actions. Inclusion of a facility or site on the list does not in itself reflect a judgment of the activities of the owner or operator, it does not require those persons to undertake any action, nor does it assign liability to any person. Subsequent government action in the form of remedial action or enforcement action will be necessary in order to do so, and these actions will be attended by all appropriate procedural safeguards.

Proposed additions to the NPL, 49 Fed. Reg. 40320 (Oct. 15, 1984) (quoting Report of the Committee on Environment and Public Works, Senate Report 96–848, 96th Cong., 2d Sess. 60, 1980).

Furthermore, Magistrate Evans' analysis of the plaintiff's claims of tangible loss is sufficient. *See* Recommendation, pp. 10 and 11. In addition, this court takes judicial notice that the Sheffield site has yet to be included in the final NPL. *See* 40 C.F.R. 300, App. B (1985) as amended, 50 Fed.Reg. 37630 and 37950 (Sept. 15 and 16, 1985).

4. U.S. Ecology's objections to the recommendation of dismissal of Counts V and VI against Ecology and Environment.

■ In Counts V and VI U.S. Ecology alleges that USEPA contracted with Ecology and Environment, an engineering firm, to evaluate the Sheffield site using the HRS. U.S. Ecology complains that Ecology and Environment owed a duty to it to exercise due care in evaluating and scoring the Sheffield site. The defendant allegedly breached this duty by relying on obsolete and inaccurate data in IEPA files and by failing to visit the site. Count VI adds an allegation of willful, wanton and gross negligence and a prayer for punitive damages.

Magistrate Evans recommends dismissal of both Counts V and VI for the simple reason that Ecology and Environment owed no duty to U.S. Ecology. Under Illinois law the factors to be taken into consideration to determine whether a duty exists include foreseeability, the likelihood of injury from the existence of a condition, the magnitude of the burden of guarding against it and the consequences of placing the burden on the defendant. *Barnes v. Washington,* 56 Ill.2d 22, 29, 305 N.E.2d 535 (1973); *Morgan v. Dalton Management Co.,* 117 Ill.App.3d 815, 818, 73 Ill. Dec. 313, 454 N.E.2d 57 (1983); *Hoffman v. Vernon Township,* 97 Ill.App.3d 721, 724, 53 Ill.Dec. 135, 423 N.E.2d 519 (1981). Also, a court should consider the desirability in terms of social policy for the extension of a duty. *Bloomingdale State Bank v. Capital Bank of Chicago,* 116 Ill.App.3d 132, 135, 71 Ill.Dec. 631, 451 N.E.2d 599 (2nd Dist.1983).

The Magistrate's conclusion is based on the finding that as a matter of law the loss of business reputation of which the plaintiff complains was not reasonably foreseeable. The Magistrate notes that the information provided by Ecology and Environment was "processed" by several administrative bodies before reaching the proposed NPL and thus the plaintiff had several

opportunities to protect against damage. *See* Recommendation, pp. 15–16. In addition, the Magistrate relies upon the Illinois case law which bars negligence liability which would lead to undue multiple liability for the defendant. "Allowing litigation of the [claimed] issues here could result only in the delay of the final NPL, and possible inconsistent decisionmaking, should this court and USEPA come to contrary conclusions on the reliability of the data used by Ecology and Environment." Recommendation, p. 16.

U.S. Ecology objects to the Magistrate's observations about the foreseeability of the damages to it and to the Magistrate's conclusion that no duty was owed to it. Curiously, U.S. Ecology argues that its damages to reputation are directly related to the promulgation of the NPL which includes the Sheffield site; this argument tends to exonerate the IEPA because they have no authority over the publication of the list. Additionally, plaintiff argues that the determination of foreseeability of damages is one of fact and must await the development of a factual record. Furthermore, the plaintiffs point out that a damage action against Ecology and Environment would not affect in any way the promulgation of the final NPL and would present no danger of multiple or inconsistent decisionmaking.

This court concurs in Magistrate Evans' conclusions. Illinois law characterizes the question of foreseeability of injury as one of law and not fact. *Cunis v. Brennan,* 56 Ill.2d 372, 308 N.E.2d 617 (1974). Magistrate Evans' observed that the damages alleged by the plaintiff, if they ever occur, arise from improbable conclusions of fact and law, extending over time, involving intervening parties, events, and circumstances. *See* Magistrate Recommendation, pp. 15–16. Such a chain of circumstances is so remote and so highly unlikely as to be, as a matter of law, not reasonably foreseeable.

5. U.S. Ecology's objections to the recommendation of dismissal of all counts of the complaint.

U.S. Ecology objects to the Magistrate's ruling that all counts of the complaint, as it exists presently, be dismissed. They argue that three motions to supplement the complaint are pending before the court. The most recent motion to supplement summarizes the proposed amendments. *See* Motion to Supplement, docket # 86. Magistrate Evans, on March 21, 1985, stayed the motion to supplement pending the final disposition of his recommendation.

The court declines U.S. Ecology's invitation to rule on the motion to supplement the complaint. Given the delay between the filing of the motion and this court's review of the Magistrate's Recommendation, a status conference is necessary to determine whether the alleged claims are moot because of events which may have occurred during the interim period.

Finally, it should be noted that no objections were filed to the recommendation to dismiss Count IV of the original complaint. The Magistrate's recommendation for dismissal of this count is adopted as well.

IT IS THEREFORE ORDERED that all Counts against all defendants are dismissed and the Magistrate's recommendations are accepted and adopted by the court.