**BOARHEAD CORPORATION**

v.

**Edwin B. ERICKSON, Regional Administrator, United States Environmental Protection Agency.**

Civ. A. No. 89–5008.

United States District Court,
E.D. Pennsylvania.

Dec. 15, 1989.

---

608

Robert J. Shusterman, Philadelphia, Pa., for plaintiff.

Mary Elizabeth Ward, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant.

## MEMORANDUM

O'NEILL, District Judge.

On March 31, 1989, the Environmental Protection Agency ("EPA") placed Boar-head Farms, a 118 acre parcel of land located in Bridgeton Township, Bucks County, Pennsylvania, on the National Priorities List ("NPL") of sites which may pose substantial risks to public health and welfare due to the presence of released hazardous substances, pollutants or contaminants. 40 C.F.R. Part 300, Appendix B. Plaintiff Boarhead Corporation, the owner of Boarhead Farms, filed the present action on July 10, 1989, against defendant Edwin B. Erickson, as regional administrator of the EPA, under the National Historic Preservation Act of 1966 ("NHPA"), 16 U.S.C. § 470 *et seq.* Plaintiff seeks an order striking Boarhead Farms from the NPL and staying all EPA activity with respect to Boarhead Farms until the EPA has complied with the NHPA, as well as damages for interference with plaintiff's right of quiet enjoyment of the property.

Defendant has moved to dismiss the complaint on the grounds that this Court lacks subject matter jurisdiction over plaintiff's claims, and that plaintiff's claims are not ripe. For the reasons that follow, I will grant defendant's motion.

*Background*

The Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, authorizes the EPA [1] to undertake removal or remedial action whenever there is a "release or substantial threat of release into the environment" of "any hazardous substance" or of "any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare." 42 U.S.C. § 9604. Section 107(a) of CERCLA imposes liability for incurred response costs, including the costs of removal or remedial action, on "responsible parties," defined to include past or present owners or operators of a site, as well as parties who generated, transported or accepted hazardous substances. 42 U.S.C. § 9607(a). This section also pro-

---

**1.** CERCLA actually authorizes the President to undertake removal or remedial actions, but the President has delegated most of his authority under CERCLA to the EPA administrator. *See* Exec. Order No. 12,316, 46 Fed.Reg. 42,237 (Aug. 20, 1981); Exec. Order No. 12, 580, 52 Fed.Reg. 2,923 (Jan. 29, 1987).

vides that a federal lien can be placed on a site and used as a basis for recovery by the United States to the extent that response costs are not recovered from responsible parties; recovery on the lien may occur only through an in rem action filed by the United States. 42 U.S.C. § 9607(*l*).

Pursuant to Section 105 of CERCLA, the EPA revised and republished the National Contingency Plan ("NCP") establishing "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." 42 U.S.C. § 9605(a). As part of the NCP, the EPA is required to compile and revise annually the NPL establishing "national priorities among the known releases or threatened releases throughout the United States." 42 U.S.C. § 9605(a)(8)(B).

On June 24, 1988, the EPA proposed a revision of the NPL adding 229 sites, including Boarhead Farms, to the list. 53 Fed.Reg. 23,988, 23,996 (June 24, 1988).[2] On March 31, 1989, the EPA added 93 sites, including Boarhead Farms, to the NPL. 54 Fed.Reg. 13,296, 13,311 (March 31, 1989); Complaint, ¶ 10.

The EPA notified plaintiff on May 18, 1989 that it was deemed a potential responsible party relating to Boarhead Farms. Complaint, ¶ 11. The EPA's letter of May 18, 1989 stated that the EPA intended to conduct a remedial investigation/feasibility study ("RI/FS") of Boarhead Farms, and asked plaintiff to agree within fourteen days to participate in and fund the RI/FS and any required remedial actions. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 2. This letter also stated that Boarhead Farms could not be removed from the NPL until after completion of the RI/FS and of any remedial work the EPA determined to be necessary from the RI/FS. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 2.

According to plaintiff, the Boarhead Farms property contains "numerous stone walls and foundations dating from before 1900," as well as a residence constructed around the year 1710 which "retains many original and historic building elements." Complaint, ¶ 5. Plaintiff alleges that Boarhead Farms satisfies the requirements for listing in the National Register of Historic Places, as established pursuant to the NHPA. Complaint, ¶ 6.

*Discussion*

Plaintiff claims that the EPA cannot list Boarhead Farms on the NPL or conduct an RI/FS or any other activities on Boarhead Farms unless it first complies with the NHPA. Specifically, plaintiff contends that Sections 106[3] and 110[4] of the

---

**2.** Plaintiff's complaint alleges that "[o]n or about March 31, 1989, without notice to and/or authorization from Plaintiff's (sic), Defendant EPA placed Boarhead Farm on the National Priority List." On a motion to dismiss under F.R.C.P. Rule 12(b)(6), a court must "take the allegations of the complaint as true and view[ ] them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (citations omitted). Acceptance of the complaint's allegations as true, however, does not require me to ignore the publication of the EPA's proposal to place Boarhead Farms on the NPL in the Federal Register on June 24, 1988. In any event, this Court lacks jurisdiction over plaintiff's claims regardless of whether plaintiff's first notice regarding Boarhead Farms and the NPL occurred on June 24, 1988 or March 31, 1989. *See infra.*

**3.** Section 106 of the NHPA provides: "The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470v of this title a reasonable opportunity to comment with regard to such undertaking." 16 U.S.C. § 470f.

**4.** Section 110 of the NHPA provides, in part: "The heads of all Federal agencies shall assume responsibility for the preservation of historic properties which are owned or controlled by such agency.... Each agency shall undertake, consistent with the preservation of such properties and the mission of the agency and the professional standards established pursuant to section 470a(f) of this title, any preservation, as may be necessary to carry out this section." 16 U.S.C. § 470h–2(a)(1).

NHPA require the EPA to take into account, and to seek and consider the comments of the Advisory Council on Historic Preservation regarding, the possible impact of its proposed activity on Boarhead Farms' historical features prior to listing the site on the NPL, or to conducting an RI/FS or any other activities on the site.[5] But I find that this Court lacks jurisdiction over plaintiff's claims in light of the specific limitations Congress has placed on judicial review of EPA actions under CERCLA.

As the Court of Appeals for the District of Columbia Circuit has observed, "Congress, acting within its constitutional powers, may freely choose the court in which judicial review may occur." *City of Rochester v. Bond,* 603 F.2d 927, 931 (D.C.Cir. 1979). Thus, "if there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Compensation Dept. of District Five, U.M.W. v. Marshall,* 667 F.2d 336, 340 (3d Cir.1981) (quoting *City of Rochester,* 603 F.2d at 931).

■ Congress has provided special statutory review procedures for judicial review of EPA actions under CERCLA. Regulations promulgated by the EPA under CERCLA, including the NPL, may be re-

viewed only by the Court of Appeals for the District of Columbia Circuit on application filed within 90 days of the regulations' promulgation.[6] *U.S. Ecology, Inc. v. Carlson,* 638 F.Supp. 513, 518–519 (C.D.Ill. 1986); *D'Imperio v. United States,* 575 F.Supp. 248, 254 (D.N.J.1983) (holding that the NCP, including the NPL, is a "regulation" reviewable only in accordance with § 9613(a)). Under CERCLA's timing of review provision, federal courts have jurisdiction over challenges to EPA removal or remedial actions only if they fall within five narrow categories of actions, none of which encompasses plaintiff's claims in the present action.[7]

Congress expressly limited federal court jurisdiction over challenges to EPA activities under CERCLA in order to prevent delay of cleanup by litigation, including litigation concerning the EPA's compliance with laws other than CERCLA. As Senator Thurmond stated in the Senate debate on the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 *et seq.* (1986), which amended CERCLA to add, among other provisions, the timing of review provision (§ 9613(h)):

> the timing of review section ensures that Government and private cleanup re-

**5.** Plaintiff also claims that under the NHPA the EPA must comply with Pennsylvania historic preservation requirements. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 33.

**6.** 42 U.S.C. § 9613(a) provides: "Review of any regulation promulgated under this chapter may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia. Any such application shall be made within ninety days from the date of promulgation of such regulations. Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs."

**7.** 42 U.S.C. § 9613(h) provides: "No Federal court shall have jurisdiction under Federal law other than section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and

appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action."

sources will be directed toward mitigation, not litigation. The section is designed to preclude piecemeal review and excessive delay of cleanup. Interested parties will be able to participate early in a more regularized administrative process instead of making premature challenges in court to remedy selection or liability.

.　　.　　.　　.　　.,

The timing of review section is intended to be comprehensive. *It covers all lawsuits, under any authority, concerning the response actions that are performed by EPA* and other Federal agencies, by States pursuant to a cooperative agreement, and by private parties pursuant to an agreement with the Federal Government. *The section also covers all issues that could be construed as a challenge to the response*, and limits those challenges to the opportunities specifically set forth in the section.

132 Cong.Rec. S14928–29 (daily ed. Oct. 3, 1986) (statement of Sen. Thurmond) (emphasis added).

Plaintiff's claims in the present action can be asserted only in accordance with § 9613. To the extent plaintiff seeks removal of Boarhead Farms from the NPL, or damages for the listing of Boarhead Farms on the NPL, plaintiff seeks review of the NPL, and can assert its claim only in the Court of Appeals for the District of Columbia Circuit.[8] To the extent that plaintiff seeks an order staying the EPA from conducting an RI/FS or other removal or remedial actions on Boarhead Farms, or damages attributed to the prospect of such actions, plaintiff prematurely seeks review of the EPA's anticipated actions. Under § 9613(h), plaintiff cannot seek review in a federal court of the EPA's removal or remedial actions until either an en-

forcement or cost-recovery action has commenced under §§ 9606 or 9607, or removal and any remedial action has been completed. Plaintiff alleges, however, only that the "EPA intends to perform or cause the performing of extensive tests, explorations and other activities on Boarhead Farm." Complaint, ¶ 12.

Plaintiff cannot avoid the specific statutory restrictions on jurisdiction set forth in § 9613 by claiming jurisdiction under the NHPA. The Court of Appeals for the Fifth Circuit recently rejected a similar attempt to use the NHPA to elude special statutory procedures for review of a federal agency's action in *Bywater Neighborhood Association v. Tricarico*, 879 F.2d 165 (5th Cir.1989). In *Bywater*, the plaintiff sought to remove a satellite earth station licensed by the Federal Communications Commission ("FCC") and a microwave tower for which a license application was pending before the FCC. As in the present case, the *Bywater* plaintiff claimed that the FCC had violated Section 106 of the NHPA in considering and granting the license applications, and that the Court had jurisdiction over plaintiff's claim under the NHPA.[9] But the Court affirmed the district court's ruling that it lacked jurisdiction under specific statutory provisions vesting exclusive jurisdiction over FCC final orders and licensing decisions in the respective courts of appeals. The Court held that the exclusive procedures Congress established for review of the agency's action must be followed even when the agency's action is challenged under the NHPA:

... the private right of action arising under the NHPA might be an alternative basis for Bywater's suit in district court. Thus, some tension exists between sec-

---

**8.** Although plaintiff states that it does not ask this Court to address "the evaluation of the site as a National Priority List site," plaintiff nevertheless challenges the listing of Boarhead Farms on the NPL on the basis that the EPA has violated the NHPA. Whatever the legal basis for plaintiff's challenge to the listing of Boarhead Farms on the NPL, that challenge must be asserted in the Court of Appeals for the District of Columbia Circuit under § 9613(a).

**9.** In *Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457–458 (5th Cir.1989), the Court of Appeals for the Fifth Circuit held that the NHPA, in 16 U.S.C. § 470w–4, creates a private right of action that may be brought by any interested person against an agency. *Bywater*, 879 F.2d at 167.

tion 470w–4, as construed in *Vieux Carre*, and the specific statutory provisions governing appeals of FCC decisions. We resolve that tension in favor of Congress's specific and obvious intent to restrict to the circuit courts any appeals from rulings of the FCC. Though we have construed section 470w–4 to create a private right of action that may be brought in "any U.S. District Court," *Vieux Carre*, 875 F.2d at 458, we find no intent in the legislative history of that section to override the special provisions concerning the FCC.

879 F.2d at 168.

I find the *Bywater* Court's reasoning equally applicable in this case. Any tension that may exist between a district court's jurisdiction over claims to enforce the NHPA against an agency and the specific statutory provisions governing review of EPA actions under CERCLA I resolve in favor of Congress's obvious intent to restrict jurisdiction over review of EPA actions under CERCLA. "[W]here, as here, Congress has established exclusive procedures for judicial review of a particular agency's actions, [courts] are bound to follow those dictates." *Bywater*, 879 F.2d at 169, n. 15 (citing *Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965)).[10]

Plaintiff suggests that a holding that this Court lacks jurisdiction over its claims would be tantamount to repealing the NHPA for those agencies which have specific jurisdictional rules. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 2; Plaintiff's Sur Reply in Opposition to Defendant's Motion to Dismiss, at 4–5. But in finding that this Court lacks jurisdiction, I hold only that plaintiff must assert any NHPA claims challenging the EPA's actions under CERCLA in accordance with the specific statutory review provisions enacted by Congress. Because the question is not before me, I express no

opinion as to whether the plaintiff's NHPA claims could be considered by a court properly exercising jurisdiction under § 9613.

■ Plaintiff argues that if this Court lacks jurisdiction, the claims challenging the listing of Boarhead Farms on the NPL should be transferred to the Court of Appeals for the District of Columbia Circuit, not dismissed.[11] Under 28 U.S.C. § 1631, when a court determines that it lacks jurisdiction over an action, it "shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." But under § 9613(a), challenges to the NPL must be filed "within ninety days from the date of promulgation" of the NPL. The EPA promulgated the revised NPL adding Boarhead Farms on March 31, 1989. Plaintiff did not file the present action until July 10, 1989, 101 days after the NPL was promulgated. As a result, plaintiff could not have brought this action in the Court of Appeals for the District of Columbia Circuit at the time this action was filed here, and I cannot transfer this action under § 1631.

■ In its Memorandum in Opposition to Defendant's Motion to Dismiss, pp. 51–55, plaintiff argues that it did not receive sufficient notice of the listing of Boarhead Farms on the NPL to start the running of the 90 day period. But in its Sur Reply Memorandum, plaintiff admits that in addition to publication of the revised NPL in the Federal Register on March 31, 1989, the EPA also notified plaintiff's counsel of that time that Boarhead Farms had been added to the NPL by both telephone and letter. Plaintiff's Sur Reply in Opposition to Defendant's Motion to Dismiss, at 7–9. Plaintiff does not dispute that it received these actual notices of the NPL listing over 90 days before filing the present action. Plaintiff's contentions that the letter did not constitute sufficient notice because it was "an example of arcane agency argot"

**10.** Plaintiff attempts to distinguish *Bywater* in pp. 5–7 of its Sur Reply Memorandum, but I find that its arguments are without merit and do not require discussion.

**11.** As discussed *supra,* at the present time no federal court has jurisdiction over the other claims plaintiff has asserted in this action.

and was "inconsistent" with the telephone message are without merit. *See* Plaintiff's Sur Reply in Opposition to Defendant's Motion to Dismiss, at 8–9; Defendant's Reply in Support of Its Motion to Dismiss, Exhibits 13, 14.[12]

Because I find that this Court lacks jurisdiction over plaintiff's claims under the specific statutory provisions Congress has provided for review of the EPA's actions under CERCLA, I need not reach defendant's contention that plaintiff's claims are not ripe.

## ORDER

AND NOW, this 15th day of December, 1989, upon consideration of defendant's motion to dismiss, and of the supporting and opposing memoranda, it is hereby ORDERED that said motion is GRANTED. Plaintiff's complaint is DISMISSED for lack of subject matter jurisdiction.

---

12. Although the contents of the letter and telephone message are outside the bounds of plaintiff's complaint, plaintiff admitted receiving them and discussed their contents in its Sur Reply Memorandum, at 7–9.