879 F.2d 165
 BYWATER NEIGHBORHOOD ASSOCIATION, Plaintiff-Appellant,
v.
William J. TRICARICO, in his capacity as Secretary, Federal
Communications Commission, Crescent City
Communications Company, Inc., of
Delaware, and Notel, Inc.,
Defendants-Appellees.
 No. 88-3901
 Summary Calendar.
United States Court of Appeals,
 Fifth Circuit.
Aug. 8, 1989.
 
 James G. Derbes, New Orleans, La., for plaintiff-appellant.
 M. Alice Thurston, David C. Shilton, John P. Greenspan, Nancy Stanley, F.C.C., Washington, D.C., John Volz, Stephen Mark Gallinghouse, U.S. Attys., Mark Gallinghouse, Asst. U.S. Atty., New Orleans, La., for Tricarico (Federal).
 William Wright, Jr., New Orleans, La., for Notel, Inc.
 Paul L. Zimmering, New Orleans, La., for Crescent City.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, KING, and SMITH, Circuit Judges.
 JERRY E. SMITH, Circuit Judge:
 
 
 1
 The Bywater Neighborhood Association ("Bywater") seeks the removal of two structures it considers inconsistent with the character of its neighborhood, a national historic district. The two structures are a 200-foot television microwave tower, owned and built by Crescent City Communications Company, Inc. ("Crescent City"), and a satellite earth station, owned and built by Notel, Inc., ('Notel'), a firm related to Crescent City. The Federal Communications Commission ("FCC"), together with local authorities, is the regulatory body with authority to issue licenses for the operation of both facilities.[1] The FCC has already issued a license for the satellite earth facility, now constructed and operational. However, it has "deferred" action on the operating license for the television transmitter, although the tower itself has been built under the "one-step" licensing procedure.
 
 
 2
 The gravamen of Bywater's complaint is that the FCC failed to adhere to the dictates of the National Historic Preservation Act ("NHPA") and to its own regulations, which require it to consult with the NHPA Advisory Council with regard to the potential effect the structures might have upon the Bywater National Historic District. Bywater contends that the FCC's failure in this regard was, in part, the result of Crescent City and Notel's having withheld important facts concerning the area in which they were to build. Bywater brought this suit against the FCC, Crescent City, and Notel under the Administrative Procedure Act ("APA"),[2] the Declaratory Judgment Act,[3] the National Historic Preservation Act,[4] and the Mandamus and Venue Act.[5] The district court dismissed the suit for want of subject-matter jurisdiction. We affirm.
 
 I.
 
 3
 Bywater correctly observes that the NHPA expressly permits private suits outside the APA review process; it points to 16 U.S.C. Sec. 470w-4, which provides that attorneys' fees, expert witness fees, and other costs may be awarded.[6] In Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown, 875 F.2d 453, 457-58 (5th Cir.1989), we held that section 470w-4 does in fact create a private right of action that can be brought by any interested person, but only against the agency, since the NHPA, by its terms, can be violated only by an agency.[7]
 
 
 4
 Bywater seeks to compel the FCC's compliance with the following NHPA provision:
 
 
 5
 [T]he head of any Federal ... agency having authority to license any undertaking shall, ... prior to the issuance of any license, ... take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to such undertaking.
 
 
 6
 16 U.S.C. Sec. 470f.
 
 
 7
 Here, however, it is the FCC which Bywater accuses of neglecting its NHPA duties, and in suits against that agency, special rules apply. Those rules are found in 28 U.S.C. Sec. 2342[8] and 47 U.S.C. Sec. 402(b),[9] which vest exclusive jurisdiction over appeals from the FCC's final orders in the respective circuit courts of appeals[10] and, in the case of licensing decisions, in the District of Columbia Circuit alone.[11] The Supreme Court has declared that "[l]itigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." FCC v. ITT World Communications, Inc., 466 U.S. 463, 468, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984) (citing Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 69, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970)). Yet that is precisely the purpose of Bywater's suit. The association's plea before this court is that we "maintain District Court jurisdiction over both facilities so that, in the event that the FCC denies and/or revokes permits for their operation, their removal from the Historic District can be assured."
 
 
 8
 In ITT World Communications, ITT brought its claim against the FCC under the APA, 5 U.S.C. Sec. 703,[12] arguing that the court of appeals was an inadequate forum because the record had not been fully developed. The Court, rejecting that argument, observed that the court of appeals could remedy any deficiencies in the record with a remand to the agency. 466 U.S. at 469. Hence, the Court declared, the APA was not a proper vehicle for circumventing the special statutory review process.
 
 
 9
 That is not the last word for this case, however, since the private right of action arising under the NHPA might be an alternative basis for Bywater's suit in district court. Thus, some tension exists between section 470w-4, as construed in Vieux Carre, and the specific statutory provisions governing appeals of FCC decisions. We resolve that tension in favor of Congress's specific and obvious intent to restrict to the circuit courts any appeals from rulings of the FCC. Though we have construed section 470w-4 to create a private right of action that may be brought in "any U.S. District Court," Vieux Carre, 875 F.2d at 458, we find no intent in the legislative history of that section to override the special provisions concerning the FCC.[13] We follow the lead of the court in City of Rochester v. Bond, 603 F.2d 927, 931 (D.C.Cir.1979), in recognizing that
 
 
 10
 Congress, acting within its constitutional powers, may freely choose the court in which judicial review may occur.... If ... there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.
 
 
 11
 Indeed, any doubts we might have about Congress's intent in these matters is resolved in the APA, which states, "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute." 5 U.S.C. Sec. 703.
 
 
 12
 For similar reasons, we must also reject the Mandamus and Venue Act and the Declaratory Judgment Act as independent predicates for district court jurisdiction in this case.[14] Aside from our adherence to the general principle that Congress's exclusive and specific review procedure should be followed, we observe that the Mandamus and Venue Act also fails to confer jurisdiction in that "it is an extraordinary remedy that is not available when review by other means is possible." Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 78 (D.C.Cir.1984) (citing Kerr v. United States Dist. Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)). Likewise, where Congress has created a specific mode of judicial review of administrative orders, declaratory relief under 28 U.S.C. Sec. 2201 is not available to those who have not pursued that remedy. See American President Lines, Ltd. v. Federal Maritime Bd., 235 F.2d 18 (D.C.Cir.1956). Our courts "recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge." Port of Boston Marine Terminal Ass'n, 400 U.S. at 68, 91 S.Ct. at 208 (citing Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907)).[15]
 
 II.
 
 13
 For specified litigants appealing FCC orders, courts have interpreted 47 U.S.C. Sec. 402(b) to allow venue only in the District of Columbia Circuit. See FCC v. Columbia Broadcasting Sys., 311 U.S. 132, 136, 61 S.Ct. 152, 153, 85 L.Ed. 87 (1940); Campos v. FCC, 650 F.2d 890, 892 (7th Cir.1981). Bywater's complaint falls within category (6) of section 402(b), which provides that appeals may be taken before the District of Columbia Circuit "[b]y any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1)-(4) of this subsection." In Bywater's prayer to this court, it admits that it would be "premature," because Bywater has not yet exhausted its administrative remedies, for this court or the district court a quo to act until the FCC has issued an order with respect to Crescent City's application and a final order, after entertaining Bywater's petition to revoke, with respect to Notel's license. Instead, Bywater asks that we "maintain jurisdiction" until these events have occurred. But if and when those events occur, Bywater's complaint will fall squarely within section 402(b)(6), and venue will lie only in the District of Columbia Circuit. Hence, any order from our court requiring the district court to "preserve" jurisdiction pending issuance of the FCC's final orders would be futile. The district court therefore properly dismissed Bywater's suit.
 
 III.
 
 14
 The district court correctly determined that it was without jurisdiction to hear this complaint against the FCC. When the FCC's final orders have been issued, Bywater must follow the path Congress has laid out for judicial review of those decisions. We note that our ruling should in no way be read as a comment on the merits of Bywater's claims against the FCC.
 
 
 15
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The FCC explains that it also requires a license for the construction of certain types of facilities. However, for both facilities at issue here, "streamlined" application processes were available: Notel was able to submit one application for both the construction and operation of the satellite earth station. For the television microwave tower, Crescent City took advantage of an available "one-step" process under which there is no requirement that the applicant receive a construction permit, although the applicant cannot operate the facility without a license. Applicants that, like Crescent City, use this procedure take the risk that the license will be denied and the structure thereby will become useless for transmitting purposes
 
 
 [2]
 5 U.S.C. Sec. 701 et seq
 
 
 [3]
 28 U.S.C. Sec. 2201 et seq
 
 
 [4]
 16 U.S.C. Sec. 470 et seq
 
 
 [5]
 28 U.S.C. Sec. 1361
 
 
 [6]
 Section 470w-4 reads, in its entirety,
 In any civil action brought in any United States district court by any interested person to enforce the provisions of this subchapter, if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other costs of participating in such action, as the court deems reasonable.
 
 
 [7]
 Hence, were it possible for Bywater to go forward with this action, the private defendants, Crescent City and Notel, would be dismissed
 
 
 [8]
 Section 2342 provides,
 The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--
 (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47;
 ....
 
 
 [9]
 Section 402(b) provides:
 * * *
 (b) Appeals may be taken from decisions and orders of the [FCC] to the United States Court of Appeals for the District of Columbia in any of the following cases:
 (1) By any applicant for a construction permit or station license, whose application is denied by the Commission.
 (2) By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.
 (3) By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights thereunder, whose application is denied by the Commission.
 (4) By any applicant for the permit required by section 325 of this title whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.
 * * *
 (6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1)-(4) of this subsection.
 
 
 [10]
 See South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n, 744 F.2d 1107, 1114 (5th Cir.1984) ("the exclusive method for obtaining judicial review of FCC action is a direct appeal to the court of appeals pursuant to [the applicable statute]")
 
 
 [11]
 See infra Part II
 
 
 [12]
 Section 703 provides as follows:
 The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.
 
 
 [13]
 The House Report states simply,
 The intent is to ensure that property owners, non-profit organizations and interested individuals who may otherwise lack the means for court action be awarded reasonable costs for actions taken under this Act. The intent is not to award costs for frivolous suits against Federal agencies.
 H.R. No. 1457, 96th Cong., 2d Sess. 46 (1980), reprinted in 1980 U.S.Code Cong. & Ad. News 6378, 6409.
 
 
 [14]
 Bywater would also have us premise jurisdiction upon the old workhorse, 28 U.S.C. Sec. 1331. But Congress may, as 47 U.S.C. Sec. 402(a) and (b) indicate, narrow that jurisdiction; to the extent that Bywater argues that the district court could retain "residual federal question jurisdiction" on the ground that the agency's violation might be found a patent abuse of its authority or a manifest infringement of a substantive right, we must reject that jurisdictional basis also. Nothing precludes Bywater from obtaining immediate remedies from the District of Columbia Circuit. See Tennessee Dep't of Employment Sec. v. Secretary of Labor, 801 F.2d 170, 175 n. 8 (6th Cir.1986)
 
 
 [15]
 We note that by such reasoning, we do not thereby defeat any private right of action that may exist against other agencies not in compliance with the NHPA. Nothing in our opinion should be read as precluding Bywater, or similar associations aggrieved by an agency's failure to follow the NHPA's procedures, from bringing suit against that agency in the district court. See, e.g., Vieux Carre (suit against Army Corps of Engineers); Morris County Trust for Historic Preservation v. Pierce, 714 F.2d 271, 278-82 (3d Cir.1983) (action against Department of Housing and Urban Development). But where, as here, Congress has established exclusive procedures for judicial review of a particular agency's actions, we are bound to follow those dictates. See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965)