**BOARHEAD CORPORATION,**
**Appellant,**

v.

**Edwin B. ERICKSON, Region Administrator, United States Environmental Protection Agency, Region III, Appellee.**

**No. 90–1040.**

United States Court of Appeals, Third Circuit.

Argued June 1, 1990.

Decided Jan. 16, 1991.

Robert J. Shusterman (argued), Philadelphia, Pa., for appellant.

Richard B. Stewart, Asst. Atty. Gen., Evelyn S. Ying (argued), David C. Shilton, Mary Elizabeth Ward, U.S. Dept. of Justice Land & Natural Resources Div., Washington, D.C., Lawrence E. Starfield, Atty., Office of Gen. Counsel, U.S. E.P.A., Washington, D.C., and Brian Nishitani, Asst. Regional Counsel, U.S. E.P.A., Philadelphia, Pa., for appellee.

Andrea C. Ferster (argued), David A. Doheny, Vice–President and Gen. Counsel, Elizabeth S. Merritt, Asst. Gen. Counsel, Nat. Trust for Historic Preservation, Washington, D.C., and Katherine L. Niven, Chief Counsel Pennsylvania Historical and Museum Com'n, Harrisburg, Pa., for amici curiae Nat. Trust for Historic Preservation in the U.S. and the Pennsylvania Historical and Museum Com'n.

Before BECKER, HUTCHINSON and GARTH, Circuit Judges,

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

This appeal presents the conflicting demands two federal statutes—the National Historic Preservation Act of 1966 (Preservation Act), as amended, 16 U.S.C.A. §§ 470 to 470w–6 (West 1985 & Supp.1990), and the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C.A. §§ 9601–9675 (West 1983 & Supp.1990)—place upon the Environmental Protection Agency (EPA) when the EPA decides to conduct preclean-up studies on a Superfund [1] site that is also eligible to be listed as a historic place. We must determine whether the district court had jurisdiction to hear a property owner's request,

---

1. CERCLA established a trust fund, which is commonly known as "Superfund." *See Exxon Corp. v. Hunt*, 475 U.S. 355, 359, 106 S.Ct. 1103, 1107, 89 L.Ed.2d 364 (1986). Money from the Superfund is used to clean-up sites where hazardous substances have been released. *See id.*

brought pursuant to the Preservation Act, to stay · the EPA's CERCLA-related preclean-up activities until the EPA conducts appropriate review under § 106 of the Preservation Act, 16 U.S.C.A. § 470f.[2] The property owner, Boarhead Corporation (Boarhead), owns a farm. American Indians who once roamed the region used part of the farm as a burial ground. In this century, Boarhead exposed parts of the farm to toxic waste. Boarhead now says the Indian remains and artifacts should be protected before work can begin to remove the poisons now present on its land.

The district court dismissed Boarhead's complaint against Edwin B. Erickson, Regional Administrator of the EPA, for lack of subject matter jurisdiction. *See Boarhead Corp. v. Erickson*, 726 F.Supp. 607 (E.D.Pa.1989). It held that the complaint must be dismissed because it did not meet the timing procedures for judicial review specified in § 113(h) of CERCLA, 42 U.S.C.A. § 9613(h).[3] Relying on the reasoning of *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1296, 108 L.Ed.2d 474 (1990), the district court concluded that the Preservation Act did not trump § 113(h)'s jurisdictional limitations

and that any claim Boarhead may have against the EPA or its officials under the Preservation Act can be asserted only in accordance with § 113's review procedures. Boarhead says this ruling desecrates the remains of the Indians who first inhabited the region and risks destruction of the farm's historical and archaeological value.

Although the argument in favor of protecting our Indian heritage does not lack force even when advanced by a polluter, we hold that the district court did not err when it dismissed Boarhead's complaint against Erickson for lack of subject matter jurisdiction. While a district court normally has federal question jurisdiction pursuant to 28 U.S.C.A. § 1331 (West Supp.1990) in a complaint arising under the Preservation Act and while the Administrative Procedures Act (APA), 5 U.S.C.A. §§ 701–706 (West 1977), establishes a presumptive right to judicial review, these normal means of review are not available when CERCLA is involved. The plain language of CERCLA § 113 shows that Congress intended to deny the district courts jurisdiction to hear complaints challenging the EPA's Superfund clean-up or preclean-up activities, even if a statute other than CERCLA ordi-

---

**2.** Section 106 of the Preservation Act reads:

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470v of this title a reasonable opportunity to comment with regard to such undertaking.
16 U.S.C.A. § 470f.

**3.** Section 113(h) of CERCLA provides:

No federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup

standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover· a ·penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.
42 U.S.C.A. § 9613(h). Boarhead's complaint does not fit into any of these five enumerated exceptions.

narily would create a federal claim. Similarly, the presumptive right to judicial review under the APA disappears because § 113 clearly precludes such review at this time.

Boarhead's claim that the Indian remains or the artifacts on the land may suffer irreparable harm from delayed review of its complaint is unavailing. In § 113 Congress explicitly limited a district court's power to hear Boarhead's request for equitable relief while the EPA is continuing to perform clean-up related activities. Boarhead's complaint does not fall within any of the five exceptions enumerated in § 113(h), and therefore the district court had no jurisdiction to entertain Boarhead's action.[4] Because § 113 clearly deprives the district court of jurisdiction, we will affirm the district court's order dismissing Boarhead's complaint.

## I.

Boarhead Farm is a 118 acre tract of land Boarhead owns in upper Bucks County, Pennsylvania, near the Delaware Canal. Title to the property traces to a grant from William Penn. A late eighteenth century, largely stone farmhouse is part of the farm, stone field walls traverse the property and there may be archaeological or historical remains on the land. Boarhead says that the farm is eligible to be listed on the National Register of Historic Places.[5]

Most of the Boarhead Farm property is used as gamelands, but the developed portion includes a private residence, a horse farm and a machinery servicing/repair shop for construction and transport vehicles. Adjacent to the gamelands are two large automobile graveyards. In the early- and mid–1970's, three or four serious chemical spills from trucks hauling chemicals and waste for Boarhead's president occurred on the property.

On March 31, 1989, after concluding that there was a significant risk that hazardous substances would be released at Boarhead Farm and after giving interested parties the appropriate notice and comment period, the EPA designated the property as a Superfund site on its National Priorities List. Thereafter, on May 18, 1989, the EPA sent Boarhead a letter telling Boarhead that the EPA intended to conduct several studies to determine the extent of the problem and that it considered Boarhead a "potentially responsible party" for the contamination. *See* Appellant's Appendix (App.) at 22. The intended studies would include a Remedial Investigation and Feasibility Study (RI/FS) for remedial action. Depending on what was discovered, the EPA explained that it could take other responsive steps under CERCLA, including "expedited response actions," "emergency removal actions" and "implementing the EPA-approved remedial option." *Id.* at 23.

Boarhead told the EPA in its reply that Boarhead Farm was eligible to be listed as a historic place and asked the EPA whether it had performed a § 106 review under the Preservation Act. The EPA told Boarhead in a letter dated September 19, 1989, that although it had not conducted a formal § 106 review, any appropriate historic preservation issues would be duly considered as part of its established CERCLA procedures.[6] *See* App. at 26.

---

**4.** We note that certain regulations the EPA has promulgated, as well as more comprehensive regulations that the EPA currently is considering, should minimize the harm that Boarhead could suffer from delayed review. *See infra* note 17.

**5.** In a letter dated October 23, 1989, and addressed to the EPA, the Pennsylvania Historical and Museum Commission (the primary historic preservation bureau in the state) agreed with Boarhead that the farm was eligible to be listed on the National Register because there was a high probability that the property contains historic and prehistoric archaeological resources. *See* Addendum to Brief for Amici.

**6.** In a letter dated September 19, 1989, the EPA asked Boarhead to provide evidence that the farm is eligible to be listed on the National Register of Historic Places. The letter stated: [P]ursuant to the authority of CERCLA Section 104(e), 42 U.S.C. Section 9604(e), EPA hereby requests that Boarhead Corporation provide EPA with any information that it has to support the contention that the Site, or any portion thereof, is eligible for listing on the [National Register] or is otherwise a sensitive cultural resource. Please provide any such

Before it received the EPA's response, Boarhead went to court and filed a complaint in the United States District Court for the Eastern District of Pennsylvania on July 10, 1989. In the complaint Boarhead asked the district court to strike Boarhead's name from the National Priorities List and sought a stay of any EPA activities affecting Boarhead Farm. Boarhead asserted that the district court had subject matter jurisdiction to issue such an order pursuant to the Preservation Act because Boarhead Farm was a historic piece of property and met the requirements for listing on the National Register of Historic Places.

The complaint went on to say that the EPA had failed to conduct a § 106 review, as the Preservation Act and regulations promulgated pursuant to the Act, *see* 36 C.F.R. §§ 800.1–800.15 (1989), required. Review under § 106 of the Preservation Act was designed to expose federal agencies to expertise the Advisory Council on

Historic Preservation and state historic preservation officers provided and to force the agencies to consider alternate approaches to problems in order to minimize the damage to historic property without frustrating the agencies in fulfilling their obligations under federal law. Boarhead asked the district court to prohibit the EPA from taking further action on Boarhead Farm until the EPA completed a § 106 review.[7] Boarhead also requested monetary damages for the EPA's interference with its right to quiet enjoyment of its property and reasonable attorneys' fees pursuant to § 305 of the Preservation Act.[8]

Erickson, the EPA's Regional Administrator named as defendant in the suit, moved to dismiss Boarhead's complaint. He asserted that the district court did not have subject matter jurisdiction over Boarhead's claims.[9] Alternately, Erickson argued that Boarhead's complaint was not ripe because the EPA had not yet done

comments within 10 days of the receipt of this letter to the undersigned. The Agency has also requested the comments of the Pennsylvania Historic Preservation Officer and Bucks County Historical Society on this matter. App. at 26. The EPA sent similar letters to the Pennsylvania Historic Preservation Officer, who is in charge of the Pennsylvania Historical and Museum Commission, an amicus curiae in this case, and to the Executive Director of the Bucks County Historical Society. The letters requested their views "on the existence of or means to identify any properties at or near the [Boarhead Farm] Site that are listed, or eligible for listing, on the [National Register]." *Id.* at 28, 30.

7. In its complaint, Boarhead also alleged that the EPA violated the Preservation Act when it failed to conduct a § 110 review. Since § 110 of the Preservation Act, 16 U.S.C.A. § 470h–2, deals with property the federal government owns or controls, it does not apply to Boarhead Farm. Boarhead, apparently realizing this, has not pursued this issue on appeal.

8. Section 305 of the Preservation Act reads:

In any civil action brought in any United States district court by any interested person to enforce the provisions of this subchapter, if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other costs of participating in such action, as the court deems reasonable.

16 U.S.C.A. § 470w–4 (as added by Pub.L. No. 96–515, Title V, § 501, 94 Stat. 3002 (1980)).

9. Specifically, Erickson relied on several subsections of § 113 of CERCLA, 42 U.S.C.A. § 9613, in support of his assertion that the district court lacked jurisdiction over Boarhead's complaint. With respect to the request to stay the EPA's activity on Boarhead Farm until a § 106 review was conducted, he relied on § 113(h). As has been noted, *see supra* note 3, Boarhead's complaint did not fit into any of the five exceptions specified in that subsection.

As for Boarhead's request to strike its name from the National Priorities List, Erickson relied on § 113(a):

Review of any regulation promulgated under this chapter [i.e., under CERCLA] may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia. Any such application shall be made within ninety days from the date of promulgation of such regulations. Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs.

42 U.S.C.A. § 9613(a). Placement of a site on the National Priorities List is treated as the promulgation of a regulation. *See D'Imperio v. United States*, 575 F.Supp. 248, 254 (D.N.J.1983). He noted that Boarhead's complaint was not filed in the District of Columbia Circuit, nor was it filed within 90 days of when Boarhead Farm was added to the National Priorities List.

anything that would damage any historic resource on Boarhead Farm.

On December 15, 1989, the district court issued its order and memorandum opinion granting Erickson's motion to dismiss. The court held that it did not have jurisdiction to hear Boarhead's complaint. It wrote:

> [Boarhead's] claims in the present action can be asserted only in accordance with § 9613. To the extent [Boarhead] seeks removal of Boarhead Farms from the [National Priorities List], or damages for the listing of Boarhead Farms on the [list], [Boarhead] seeks review of the [list], and can assert its claim only in the Court of Appeals for the District of Columbia Circuit. To the extent that [Boarhead] seeks an order staying the EPA from conducting an RI/FS or other removal or remedial actions on Boarhead Farms, or damages attributed to the prospect of such actions, [Boarhead] prematurely seeks review of the EPA's anticipated actions. Under § 9613(h), [Boarhead] cannot seek review in a federal court of the EPA's removal or remedial actions until either an enforcement or cost-recovery action has commenced under §§ 9606 or 9607, or removal and any remedial action has been completed. [Boarhead] alleges, however, only that the "EPA intends to perform or cause the performing of extensive tests, explorations and other activities on Boarhead Farm."

*Boarhead Corp.*, 726 F.Supp. at 611 (footnote omitted).[10] Boarhead has timely appealed to this Court.

### II.

██ We have appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 (West Supp. 1990) over the district court's final order granting Erickson's motion to dismiss and dismissing Boarhead's complaint. We exercise plenary review over the question of whether the district court lacked jurisdiction to hear Boarhead's complaint. *See*

*York Bank & Trust Co. v. Federal Sav. & Loan Ins. Corp.*, 851 F.2d 637, 638 (3d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). As with any motion to dismiss, "[w]e accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

### III.

██ At the outset, the parties to this appeal now agree that the district court was correct when it dismissed that portion of Boarhead's complaint seeking to have its name removed from the National Priorities List. *See* Brief for Appellant at 16; Brief for Appellee at 15 n. 15; *see also* Brief for Amici at 13 & n. 14. The parties are correct. As § 113(a) of CERCLA, 42 U.S.C.A. § 9613(a), provides, review of this action may be had only upon proper and timely application in the United States Court of Appeals for the District of Columbia Circuit. *See United States v. Ottati & Goss*, 694 F.Supp. 977, 984 (D.N.H.1988), *modified on other grounds*, 900 F.2d 429 (1st Cir.1990); *D'Imperio v. United States*, 575 F.Supp. 248, 254 (D.N.J.1983). Boarhead did not make a proper or timely application for removal from the list to the District of Columbia Circuit as CERCLA requires.

The acts that give rise to Boarhead's other claims for relief, however, arose only after its name had been added to the list. The District of Columbia Circuit could not have addressed them within the times set in § 113(a). Therefore, § 113(a) does not mandate dismissal of the entire complaint.

Indeed, absent CERCLA, Congress has expressly given all United States district courts jurisdiction to hear claims arising under the Preservation Act and to stay a federal agency's activities until the historical resource review § 106 of the Preservation Act requires has been conducted. Jurisdiction under the Preservation Act is based on 28 U.S.C.A. § 1331. Section 1331 provides: "The district courts shall have

---

**10.** Because the district court held that Boarhead's complaint should be dismissed for lack of jurisdiction, it did not directly confront Er-

ickson's argument that the dispute was unripe. *See Boarhead Corp.*, 726 F.Supp. at 613.

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331.

 This Court, along with other courts of appeals, has recognized that federal question jurisdiction and a private right of action generally exists in actions arising under the Preservation Act. In *Morris County Trust for Historic Preservation v. Pierce*, 714 F.2d 271 (3d Cir.1983), we held that the district court did not err in enjoining the demolition of the Old Stone Academy, which was eligible to be listed on the National Register of Historic Places, until the Department of Housing and Urban Development conducted a historical resource review pursuant to § 106 of the Preservation Act. Although *Morris County Trust* did not discuss the nature of the district court's jurisdiction, it is plain that all jurisdictional prerequisites were met and that the Court properly reached the merits of the appeal. Other courts of appeals have reached the merits of appeals dealing with issues arising under the Preservation Act without finding a jurisdictional barrier to review. *See, e.g., Lee v. Thornburgh*, 877 F.2d 1053 (D.C.Cir.1989); *Vieux Carre Property Owners, Residents & Assocs. v. Brown*, 875 F.2d 453 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 720, 107 L.Ed.2d 739 (1990); *National Center for Preservation Law v. Landrieu*, 635 F.2d 324 (4th Cir.1980) (per curiam); *WATCH v. Harris*, 603 F.2d 310 (2d Cir.), *cert. denied,* 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979). Thus, there is little question that Boarhead would have a right of action under the NHPA. Indeed, without discussing that precise issue, *Morris County Trust* assumed such a right in ruling for the Trust as against HUD.

Moreover, since § 305 of the Preservation Act, 16 U.S.C.A. § 470w-4, allows a court to award attorneys' fees and other costs "[i]n any civil action brought in any United States district court by any interested person to enforce the provisions of [the Preservation Act], if such person substantially prevails in such action," we agree with the arguments advanced by Boarhead and amici that Congress must have intended to establish a private right of action to interested parties, such as Boarhead, in these situations. *See Vieux Carre*, 875 F.2d at 458 (holding that a private right of action existed under the Preservation Act against a federal agency); *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165, 167 (5th Cir.1989) (citing *Vieux Carre*), *cert. denied,* — U.S. —, 110 S.Ct. 1296, 108 L.Ed.2d 474 (1990).

The statement of jurisdiction in Boarhead's complaint said only that the district court had jurisdiction "pursuant to 16 U.S.C. Sections 470 *et seq.,* the National Historic Preservation Act of 1966." App. at 17. It could have been more artfully drawn. Still, it is sufficient to allege federal question jurisdiction under the Preservation Act. The facts averred and Boarhead's prayers for relief further support this general statement of jurisdiction. A fair reading of the whole complaint demonstrates that Boarhead bases its claims on several provisions of the Preservation Act, including § 106. In its brief to this Court, Boarhead states that "an enforcement action under [the Preservation Act] presents a federal question, and Congress has given district courts original jurisdiction over federal questions. *See* 28 U.S.C. § 1331 (1982)." Brief for Appellant at 14.[11]

---

11. Erickson argues that the portion of Boarhead's brief quoted in the text is misleading, since § 1331, standing alone, does not authorize an action against an official of the EPA in the absence of a waiver of the government's sovereign immunity. *See* Brief for Appellee at 20 n. 16. He cites *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir.1989), where the Fifth Circuit stated that § 1331 implies no general waiver of sovereign immunity and thus a chemical manufacturer could not rely upon it as the basis for jurisdiction in a declaratory judgment action against the EPA.

In *Voluntary Purchasing Groups*, a chemical manufacturer sought a declaration that it was not liable for certain clean-up costs the EPA expended pursuant to CERCLA.

The government has waived sovereign immunity insofar as the APA gives Boarhead a right to judicial review. *See* 5 U.S.C.A. § 702:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief there-

Professors Wright and Miller note that "a failure to name the particular statute, treaty, or section of the Constitution under which the action arises is not fatal if the remainder of the complaint shows that a federal question actually is involved or relied upon by the pleader." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1209, at 112–13 (2d ed. 1990). Moreover, "[a] reference to the wrong statute or an erroneous basis of jurisdiction will be corrected by the court if it can determine the appropriate statute or jurisdictional source from the complaint." *Id.* § 1210, at 121. *See Wymard v. McCloskey & Co.,* 342 F.2d 495 (3d Cir.) (in banc) (finding jurisdiction under Bankruptcy Act, even though neither party asserted this basis of jurisdiction and complaint was insufficient to allege diversity jurisdiction), *cert. denied,* 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965). Although the statement of jurisdiction in Boarhead's complaint does not specifically mention § 1331, it is sufficient to invoke the district court's federal question jurisdiction, unless CERCLA mandates a contrary conclusion.

### IV.

■ Erickson argues that any analysis of jurisdiction limited to § 1331 is incomplete since it fails to take into account the jurisdictional limitations that CERCLA imposes. Boarhead's complaint asserts more than a violation of the Preservation Act. Although the claim is said to arise under the Preservation Act, Erickson asserts that the jurisdictional question must be analyzed under CERCLA since the complaint primarily challenges the EPA's preclean-up activities at a designated Superfund site. Section 113 of CERCLA, according to Erickson, precludes a district court from exercising jurisdiction under the Preservation Act on Boarhead's claims, at least at this time.

■ The district court recognized in its memorandum opinion, *see* 726 F.Supp. at 610, that the plain language of § 113 shows Congress's intent to limit a private party's ability to challenge the EPA's activities under CERCLA until the EPA has completed its clean-up of a hazardous site. Section 113(h) of CERCLA states that

[n]o Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section [121 of CERCLA] (relating to cleanup standards) to review any challenges to removal or remedial action selected under section [104 of CERCLA],

---

in be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States....

In addition, § 305 of the Preservation Act waives sovereign immunity insofar as Boarhead seeks attorneys' fees in connection with this action. *See Morris County Trust for Historic Preservation v. Pierce,* 730 F.2d 94 (3d Cir.1983).

In *Jaffee v. United States,* 592 F.2d 712, 718–19 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), we held that 5 U.S.C.A. § 702, as amended, waives sovereign immunity in equitable actions brought under § 1331 seeking "nonstatutory" review of agency action. "Nonstatutory" review describes those situations where a party's suit is not brought under a statute that explicitly provides for review of agency action. *See id.* at 718 n. 12. Other courts of appeals have agreed that § 702, as amended, waives the defense of sovereign immunity for injunctive actions brought pursuant to § 1331. *See B.K. Instrument, Inc. v. Unit-*

*ed States,* 715 F.2d 713, 724–25 (2d Cir.1983); *Warin v. Director, Dep't of the Treasury,* 672 F.2d 590 (6th Cir.1982) (per curiam); *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown,* 656 F.2d 564 (10th Cir.1981); *Sheehan v. Army & Air Force Exch. Serv.,* 619 F.2d 1132, 1139 (5th Cir.1980), *rev'd on other grounds,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982).

Erickson's argument that sovereign immunity is not waived here because CERCLA overrides the APA's presumptive right to judicial review under 5 U.S.C.A. § 701(a)(1) does no more than ring the changes on his primary argument that § 113 of CERCLA eliminates the jurisdiction a district court may otherwise have to hear a case arising under the Preservation Act. It is simply another way of saying that § 113(h) prohibits a district court from hearing Boarhead's complaint at this time. We thus will address the jurisdictional aspect of Erickson's argument first, because its resolution makes it unnecessary to address separately the sovereign immunity component of that same argument.

unless one of five specific situations is present. *See* 42 U.S.C.A. § 9613(h). It is at once apparent that neither § 1332 nor state law gives the district court jurisdiction to hear Boarhead's complaint challenging the EPA's ability to conduct an RI/FS study pursuant to § 104 of CERCLA before the EPA performs an appropriate review under § 106 of the Preservation Act.[12] Furthermore, it is undisputed that Boarhead's complaint does not meet any of the five exceptions enumerated in § 113(h).[13]

The limits § 113(h) imposes on a district court's jurisdiction are an integral part of Congress's overall goal that CERCLA free the EPA to conduct forthwith clean-up related activities at a hazardous site. Congress enacted CERCLA so that the EPA would have the authority and the funds necessary to respond expeditiously to serious hazards without being stopped in its

tracks by legal entanglement before or during the hazard clean-up. *See Wheaton Indus. v. United States EPA*, 781 F.2d 354, 356 (3d Cir.1986); *Lone Pine Steering Comm. v. United States EPA*, 777 F.2d 882, 886–87 (3d Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Wagner Seed Co. v. Daggett*, 800 F.2d 310, 314–15 (2d Cir.1986). The limits § 113(h) establishes are designed to prevent time-consuming litigation from delaying the prompt clean-up of these sites. CERCLA's language shows Congress concluded that disputes about who is responsible for a hazardous site, what measures actually are necessary to clean-up the site and remove the hazard or who is responsible for its costs should be dealt with after the site has been cleaned up.

Besides relying on the language of § 113(h), Erickson also points to the legisla-

---

**12.** On appeal to this Court, Boarhead relies in part on certain historic preservation statutes enacted in the State of Pennsylvania. Since Boarhead's complaint was premised on the federal Preservation Act, not on state law, we will not consider these arguments. We do note that Erickson is immune from suit based on state regulatory statutes like those Boarhead mentions absent a clear waiver of sovereign immunity. *See Hancock v. Train*, 426 U.S. 167, 178–79, 96 S.Ct. 2006, 2012–13, 48 L.Ed.2d 555 (1976); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

**13.** We cannot treat Boarhead's complaint as a citizens suit under 42 U.S.C.A. § 9659, which in certain situations is not subject to the limits on jurisdiction § 113(h) imposes. *See* 42 U.S.C.A. § 9613(h)(4). Section 9659 provides:

(a) Authority to bring civil actions
 Except as provided in subsections (d) and (e) of this section [requiring 60–day notice before a complaint is filed] and in section [113(h) of CERCLA] (relating to timing of judicial review), any person may commence a civil action on his own behalf—
 (1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter ...; or
 (2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency ...) where there is alleged a failure of the President or of such other officer to per-

form any act or duty under this chapter ... which is not discretionary with the President or such other officer.
 . . . .
(c) Relief
 The district court shall have jurisdiction in actions brought under subsection (a)(1) of this section to enforce the standard, regulation, condition, requirement, or order concerned ... to order such action as may be necessary to correct the violation, and to impose any civil penalty provided for the violation. The district court shall have jurisdiction in actions brought under subsection (a)(2) of this section to order the President or other officer to perform the act or duty concerned.
42 U.S.C.A. § 9659(a) & (c) (West Supp.1990).
 Boarhead does not allege that its complaint against Erickson is a citizens suit, nor did it give the 60-day notice § 9659(d)(1) & (e) require, *see, e.g., Hallstrom v. Tillamook County*, —— U.S. ——, 110 S.Ct. 304, 307 n. 1, 107 L.Ed.2d 237 (1989), before filing the complaint. Moreover, the complaint does not allege that Erickson violated any standard, regulation, condition, requirement or order that became effective pursuant to CERCLA, nor does it allege that Erickson failed to perform a nondiscretionary act or duty required under CERCLA. Under these circumstances, we cannot treat Boarhead's complaint as a citizens suit. Thus, we have no need to consider whether the district court could entertain at this time a citizens suit meeting the requirements of § 9659 of CERCLA. *Cf. Alabama v. United States EPA*, 871 F.2d 1548, 1557 (11th Cir.) (citizen suit exception to limits in § 113(h) applies only after the action is actually completed by the EPA), *cert. denied*, —— U.S. ——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989).

tive history of CERCLA, citing certain statements made during the congressional debates over CERCLA's provisions about the timing of the review procedures that ultimately became part of CERCLA through the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, 100 Stat. 1613 (1986). *See* 132 Cong.Rec. 29,735 (1986) (statement of Rep. Glickman); 132 Cong.Rec. 28,441 (1986) (statement of Sen. Thurmond); 132 Cong.Rec. 28,441 (1986) (statement of Sen. Simpson).

As the Supreme Court wrote in *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980):

> We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

Congress could hardly have chosen clearer language to express its intent generally to deprive the district court of jurisdiction over claims based on other statutes when the EPA undertakes the clean-up of toxic wastes at a Superfund site. The section begins: "No federal court shall have jurisdiction under federal law...." No language could be plainer. Thus, it is unnecessary for us to rely upon the legislative history that Erickson cites, even though it

is consistent with the statute's plain language.

As we wrote in *Shendock v. Director, OWCP*, 893 F.2d 1458, 1462 (3d Cir.) (in banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990):

> "Jurisdiction" is commonly defined as the "power of declaring and administering law or justice; legal authority or power." 1 The Compact Edition of the Oxford English Dictionary 1522 (1971). The legal definition of "jurisdiction" is similar: "It is the authority by which courts and judicial officers take cognizance of and decide cases.... Power and authority of a court to hear and determine a judicial proceeding." Black's Law Dictionary 766 (5th ed. 1979) (citations omitted).

Assuming Congress created federally cognizable claims for the preservation of historical sites when it enacted the Preservation Act, there was no requirement that it do so. No constitutional impediment exists to a legislative decision to limit or take away the right of protection the Preservation Act grants. The Preservation Act was the result of the legislative process. So was CERCLA.[14]

Unlike the district court, we find it unnecessary to rely on the reasoning of the Fifth Circuit in *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165 (5th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1296, 108 L.Ed.2d 474 (1990).[15] In *Tricari-*

---

**14.** Boarhead argues in its opening and reply briefs that construction of CERCLA § 113(h) to limit the availability of suits brought pursuant to the Preservation Act, which delay a CERCLA clean-up, effects an implied repeal of a portion of the jurisdiction the Preservation Act provides. The Supreme Court has written that "an implied repeal must ordinarily be evident from the language or operation of a statute." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 470, 102 S.Ct. 1883, 1891, 72 L.Ed.2d 262 (1982).

CERCLA § 113(h) states that "[n]o federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28...." Congress did not, however, make an exception to this general jurisdictional bar for suits arising under the Preservation Act. The language of § 113(h) provides "clear and convincing evidence," *see Traynor v. Turnage*, 485 U.S. 535, 542, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988), that Congress intended CERCLA to limit the

availability of suits alleging jurisdiction under the Preservation Act.

**15.** The district court relied upon *Tricarico*'s holding when it determined that it did not have jurisdiction to hear Boarhead's complaint.

> I find the [*Tricarico*] Court's reasoning equally applicable in this case. Any tension that may exist between a district court's jurisdiction over claims to enforce the [Preservation Act] against an agency and the specific statutory provisions governing review of EPA actions under CERCLA I resolve in favor of Congress's obvious intent to restrict jurisdiction over review of EPA actions under CERCLA. "[W]here, as here, Congress has established exclusive procedures for judicial review of a particular agency's actions, [courts] are bound to follow those dictates."

*Boarhead Corp.*, 726 F.Supp. at 612 (quoting *Tricarico*, 879 F.2d at 169 n. 15).

*co,* a neighborhood association sought the removal of a 200–foot television microwave tower and a satellite earth station that it considered inappropriate in a national historic district. The Federal Communications Commission (FCC) had already licensed one of the structures, and the other structure was in the process of being licensed. The essence of the neighborhood association's complaint was that the FCC had failed to comply with the requirements of the Preservation Act before licensing these two structures.

The Fifth Circuit held that the Preservation Act could not be used to circumvent the exclusive procedures for review of licensing decisions that federal law established.[16] It recognized that:

> some tension exists between section 470w–4 [§ 305 of the Preservation Act], as construed in *Vieux Carre,* and the specific statutory provisions governing appeals of FCC decisions. We resolve that tension in favor of Congress's specific and obvious intent to restrict to the circuit courts any appeals from rulings of the FCC. Though we have construed section 470w–4 to create a private right of action that may be brought in "any U.S. District Court," *Vieux Carre,* 875 F.2d at 458, we find no intent in the legislative history of that section to override the special provisions concerning the FCC.

*Tricarico,* 879 F.2d at 168.

*Tricarico* is not itself dispositive of our jurisdictional question. That case involved the Federal Communications Act, not CERCLA. Moreover, the neighborhood association made no showing of irreparable harm. Though the applicable review procedures in the Communications Act may have delayed consideration of the association's claim under § 106 of the Preservation Act

in *Tricarico,* at some point the association's complaint would have received adequate consideration in the appropriate court. This is not the case with Boarhead's complaint, since delayed review may mean no effective review at all. Therefore, although *Tricarico*'s holding does give some support to our conclusion that the district court has no jurisdiction to hear Boarhead's complaint because of the limits CERCLA imposes through § 113(h), the differences between the language of the Communications Act and the situation there involved render reliance on *Tricarico*'s rationale insufficient.

We recognize, as Boarhead points out, the possibility that the absence of jurisdiction here may do more than simply delay review of the impact that the EPA's actions may have on the historical value of the site; indeed, it may destroy or severely damage the site's historical value. Still, relief must come from Congress. We have considered the fact that the authorities on which Erickson relies deal essentially with challenges to the EPA's authority under CERCLA, not with claims premised on other federal statutes in which a party brings a complaint asserting a claim entirely distinct from any interest it may have under CERCLA. We also recognize that the cases from our Court holding that a district court did not have subject matter jurisdiction to conduct preclean-up judicial review of the EPA's emergency or remedial action were brought under the alleged authority of CERCLA. *See Wheaton Indus.,* 781 F.2d at 355–56 (action, predicated on § 113(b) of CERCLA, 42 U.S.C.A. § 9613(b), and APA, 5 U.S.C.A. § 704, that sought to enjoin expenditure of Superfund money on particular project since EPA refused to permit plaintiff to perform and control the investi-

---

**16.** The Fifth Circuit noted that 28 U.S.C.A. § 2342 (West 1978 & Supp.1990) provides:

The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47; ....

*Tricarico,* 879 F.2d at 167 n. 8. 47 U.S.C.A. § 402(b) (West 1962) provides that in certain enumerated situations, "[a]ppeals may be taken from decisions and orders of the [FCC] to the United States Court of Appeals for the District of Columbia...." *See Tricarico,* 879 F.2d at 167 n. 9.

gation and clean-up); *Lone Pine,* 777 F.2d at 884 (complaint, involving CERCLA issues, alleged that EPA's clean-up plan was too costly, agency had failed to evaluate adequately the plaintiff's clean-up proposal, and EPA's record of decision contained inaccuracies and erroneous assumptions resulting in unnecessary corrective measures).

Although these cases construe § 113(h) to limit the jurisdiction of federal courts to hear actions arising under CERCLA, they do not construe that subsection necessarily to eliminate the jurisdiction a district court would otherwise have to hear a complaint arising under a separate federal statute, such as the Preservation Act. These cases involve typical CERCLA actions in which it is apparent that § 113(h) prohibits legal action until the clean-up of the hazardous site is completed and one of the five situations described in that subsection is present. *See, e.g., Wheaton Industries,* 781 F.2d at 356; *Lone Pine,* 777 F.2d at 886–88; *Southern Pines Assocs. ex rel. Goldmeier v. United States,* 912 F.2d 713, 716 (4th Cir.1990); *Schalk v. Reilly,* 900 F.2d 1091, 1095–97 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); *Alabama v. United States EPA,* 871 F.2d 1548, 1557–59 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989); *Wagner Seed v. Daggett,* 800 F.2d 310, 314–15 (2d Cir. 1986); *Barnes v. United States Dist. Court,* 800 F.2d 822 (9th Cir.1986); *J.V. Peters & Co. v. Administrator, EPA,* 767 F.2d 263, 164–65 (6th Cir.1985). Construction of § 113(h) to preclude jurisdiction when the complaint is based on the Preservation Act, not CERCLA, *and* irreparable harm could occur if subject matter jurisdiction were denied until the EPA completed its clean-up activities poses a more difficult case.

In Boarhead's situation post clean-up review is likely to be inadequate to redress harm that occurred to archaeological and historical resources on Boarhead Farm during the EPA's clean-up. Nevertheless, the statute's plain language eliminates Boarhead's opportunity to obtain judicial review even in such circumstances.[17]

Boarhead also argues that our decision in *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981), controls this case. In *Susquehanna Valley,* we held that the district court had immediate jurisdiction to review a challenge to the Nuclear Regulatory Commission's informal decision to authorize the owner of a nuclear power plant to discharge contaminated

**17.** We note, however, that Erickson does not deny that the EPA is bound by the terms of the Preservation Act in conducting activities under CERCLA. In fact, he argues that the EPA's own regulations provide that it must consider the factors that go into a § 106 review. *See* CERCLA Compliance with Other Laws Manual, Part II, Chapter 4, at 4–2 to 4–11 (Interim Final Aug. 1989), *reprinted in* App. at 34. The EPA properly construes the Preservation Act to require it to consider the historic preservation concerns Boarhead asserts before it takes action pursuant to CERCLA. Therefore, even though we construe § 113(h) to preclude jurisdiction over Boarhead's complaint, since this would interfere with the EPA's clean-up activities without providing additional protection to the historic preservation interests the Preservation Act establishes, the EPA would be well advised to follow its own regulations and fully consider the impact preclean-up and clean-up activities may have on the historic value of Boarhead Farm and the artifacts and Indian remains buried there. Agency action is entitled to a presumption of regularity. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Frisby v. United States Dep't of Hous. & Urban Dev.,* 755 F.2d 1052, 1055 (3d Cir.1985). As we wrote in *Frisby,* 755 F.2d at 1055, "The burden of proof rests with the party alleging irregularity." Boarhead has not demonstrated on this record that Erickson cannot or will not abide by the EPA's regulations requiring him to consider the factors that go into a § 106 review. Thus, we do not reach the troubling questions of whether judicial review would be available if Boarhead could show that Erickson failed to comply with the regulations the EPA has promulgated pursuant to CERCLA or whether Boarhead would have standing to bring such a suit.

We cannot help but register our disappointment and surprise at the inability of counsel to communicate and to cooperate in working out a plan, pursuant to the EPA's procedures, which might have obviated this whole litigation. It seems to us a simple matter for the parties to have worked together to formulate a plan for performance of the RI/FS without damage to the artifacts at issue.

water into the Susquehanna River, even though the National Environmental Policy Act (Environmental Policy Act), 42 U.S. C.A. §§ 4321–4347 (West 1977 & Supp. 1990), and the Commission's regulations provided for eventual review in the court of appeals after the Commission issued a final order. *See* 619 F.2d at 239–41. We also held that the plaintiffs were not required to exhaust all available administrative review procedures, because administrative review would be inadequate to prevent an illegal discharge from occurring. *See id.* at 245. *See also Izaak Walton League of Am. v. Schlesinger*, 337 F.Supp. 287, 291–93 (D.D. C.1971) (district court had jurisdiction over action seeking to compel Atomic Energy Commission (AEC) to prepare an environmental impact statement, as the Environmental Policy Act required, even though statute established exclusive jurisdiction in court of appeals for review of final AEC orders, because review was unavailable or inadequate in court of appeals).

In *Susquehanna Valley* we refused to construe the Environmental Policy Act and associated regulations in a way that would deny the plaintiffs adequate judicial review of their complaint. However, the statute there, unlike § 113(h), did not expressly preclude jurisdiction.[18] CERCLA's timing of review procedures, as established in § 113(h), clearly preclude jurisdiction to delay or interfere with EPA clean-up activities even if those activities could irreparably harm the archaeological or historical resources on Boarhead Farm. Although post-study judicial review cannot rectify damage to historical artifacts or remains on this landmark site that occurs in the course of the EPA's clean-up, we must presume Congress balanced the problem of irreparable harm to such interests and concluded that the interest in removing the hazard of toxic waste from Superfund sites outweighed it. Boarhead's remedy lies with Congress, not the district court. The prohibition on jurisdiction includes a prohibition on equitable relief. Section 113(h) prohibits the district court from hearing Boarhead's complaint at this time, before the EPA takes any further action on Boarhead Farm.[19]

## V.

Boarhead and the amici also argue that the EPA's alleged violations of the Preservation Act are presumptively subject to judicial review under the APA. The APA, in § 702, states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." For purposes of § 702, "agency action" includes the failure to act. *See* 5 U.S.C.A. § 701(b)(2) (cross-referencing 5 U.S.C.A. § 551(13) (West 1977)).

Judicial review is not available under the APA when another statute, such as CERCLA, precludes such review, *see* 5 U.S.C.A. § 701(a)(1). Boarhead and the amici argue that there is no clear and convincing evidence that Congress intended CERCLA to preclude review in this situation, where Boarhead's complaint arises under the Preservation Act and irreparable harm may occur before any review would be permitted under § 113 of CERCLA. It is well-established that "only upon a showing of

---

**18.** In *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231 (3d Cir. 1980), *cert. denied*, 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981), we emphasized that the rule requiring exhaustion of administrative proceedings was "judge-made." 619 F.2d at 245. We went on, however, to observe that:

Congress can, of course, limit the subject matter jurisdiction of the district court.

*Id.* Here, in § 113(h), Congress has done just that. By expressly precluding federal court review until after the EPA takes further action, Congress has divested the district court of the power to entertain Boarhead's claim.

**19.** The First Circuit's recent opinion in *Reardon v. United States*, 922 F.2d 28 (1st Cir.1990), sup-

ports our conclusion that the district court lacks jurisdiction to consider a pre-enforcement judicial challenge to the EPA's actions. As the First Circuit stated, "it is clear and incontrovertible that, in enacting CERCLA § 113(h), Congress intended to bar *all* pre-enforcement judicial review of the EPA's choice of removal or remedial actions." *Id.*, at 31 (emphasis in original). Although the First Circuit held that a CERCLA lien is neither a removal nor a remedial action, and that a challenge to such a lien is therefore not barred by § 113(h), its above-quoted analysis is entirely consistent with and supports our conclusion.

'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Rusk v. Cort,* 369 U.S. 367, 380, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962)).

For further support, Boarhead and the amici rely on 5 U.S.C.A. § 703:

> The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, *in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.... Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.*

*Id.* § 703 (emphasis added). Boarhead and the amici argue that since the review procedures specified in § 113 of CERCLA are inadequate to protect historic preservation concerns important to Boarhead, § 703 provides Boarhead with a right to obtain judicial review of Erickson's actions.

Boarhead and the amici's argument that § 702 and § 703 provide Boarhead with a right to judicial review in this situation also runs afoul of the plain language of § 113(h). We cannot understand what clearer evidence could be provided than this language. *See* Note, *Statutory Preclusion of Judicial Review under the Administrative Procedures Act,* 1976 Duke L.J. 431. Thus, Boarhead's argument that APA review of violations of the Preservation Act is normally available has no force under CERCLA.

We do not think this conclusion is inconsistent with *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (resolution of the question of whether a right of action exists in a particular situation is separate from the question of whether a district court has jurisdiction to hear a complaint at all). In *Bell,* the Supreme Court observed:

> Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Id.* at 682. *See also Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675–78, 94 S.Ct. 772, 781–83, 39 L.Ed.2d 73 (1974); *Wheeldin v. Wheeler,* 373 U.S. 647, 649, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963). The problem here is not the possibility that Boarhead's action under the Preservation Act may fail. Instead, our resolution of this appeal depends upon the inability of the district court to entertain an action under the Preservation Act because § 113(h) of CERCLA deprives it of the power to hear claims under the Preservation Act, or any other statute, that would interfere with EPA's clean-up activities on a Superfund site.

## VI.

For the foregoing reasons, we hold that the district court did not have jurisdiction to hear Boarhead's complaint against Erickson. Therefore, we will affirm the district court's order dismissing Boarhead's complaint for lack of jurisdiction.